RAWLS, Judge.
Plaintiff, J. M. Hearn, brought this action against the Joneses seeking to recover $2,800 allegedly due him as the balance due on attorney’s fees for services rendered in the consummation of a sale of certain lands. The Joneses defended on the grounds that plaintiff had been paid in full in accordance with their agreement. and they appealed from an adverse judgment in the sum of $925 plus interest.
The primary question is whether there existed an oral express contract between the parties for an attorney’s fee of $1,000.
Jury trial was waived. The testimony given before the trial judge reflects the following facts :
1. The attorney was employed in June 1965 to perform the necessary services to facilitate the sale of the property. In September 1965 the parties, contemplating that a quiet title suit might be necessary, entered into an agreement that the legal fee would be $400 for only ordinary services such as preparing deed, mortgage, etc. The testimony is in conflict as to that part of the agreement respecting the fee, should court action be necessary. As to this part of the agreement, the lawyer testified that he had informed his clients that his fee would be a minimum of $1,000 if court action was necessary; whereas, appellant-clients testified that the lawyer had represented to them prior to signing an agreement to employ him as their attorney that his maximum fee would be $1,000.
2. The written agreement of employment, which was drafted by the attorney and which he requested his clients to sign sometime after his original employment, did not specify his fee. It was dated September 24, 1965.
3. The attorney had handled many real estate sales, knew that attorney’s fees were usually paid at this time, but when he prepared a tentative closing statement for the relator, he did not include his fee.
4. The closing statement distributed to those present at the closing reflected the attorney’s fee as $1,000. This statement was prepared by one Rees who was present on the occasion of employing the attorney and at the time the parties discussed what the fee would be.
5. The lawyer was present at the closing, received the cash money which was *52 paid at that time and deposited same to his trust account.
6. The lawyer made disbursements by deducting from the funds he had so collected the sum of $1,000 representing his legal fee and issuing his personal checks to his clients for the balance.
7. Appellee-lawyer retained the note and mortgage at the time of closing for the purpose of making a minor correction requested by the parties and for recording.
8. At least four times following the closing, Jones went to the lawyer’s office to get his note and mortgage but was never informed that he owed any more attorney’s fees.
9. Approximately four months subsequent to the closing, appellee-lawyer invoiced appellant Jones for $2,800 as a balance due for his “Professional services in connection with the sale of land * * ”
10. Appellee-lawyer has at all times refused to surrender his clients’ papers, holding same as security for the payment of the invoice submitted four months after closing.
Thus, the September 24, 1965, written contract of employment prepared by the attorney did not contain the agreement as to fees. The tentative closing cost statement prepared by the attorney did not state his fee. The closing cost sheet distributed at the dosing reflected a fee of $1,000. The attorney remarked then that it was not enough, but when told that same was the agreed fee, he said nothing more.
Lawyers are charged with a high degree of care in establishing with their clients the amount of their fees.[1] Absent documentary or other clear-cut proof to the contrary, when a lawyer deducts his fee at the time of the closing, it will ordinarily be presumed that he has looked after his own fiscal affairs and has collected the amounts due him. It ill behooves a member of the legal profession to collect a sizable fee, knowing at the time that his client considered the fee collected to be the total fee, and subsequent thereto hold his clients’ valuable papers as ransom for an additional sum invoiced for the first time four months after closing.
Under the evidence presented in this case, we find that the trial judge erred in entering judgment for the plaintiff.
Reversed.
JOHNSON, C. J., and CARROLL, DONALD K., and RAWLS, JJ., concur.

. Halstead v. Florence Citrus Growers’ Ass’n, 104 Fla. 21, 139 So. 132 (1932).